# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 08-10054-cv-MOORE/WHITE
### CASE NO. 06-10006-cr-MOORE

**ELOY RIVERO,**

       **Movant,**

- versus -

**UNITED STATES OF AMERICA,**

       **Respondent.**
_____/

## GOVERNMENT'S ANSWER TO MOVANT'S MOTION
## TO VACATE SENTENCE FILED UNDER 28 U.S.C. § 2255

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files its answer in opposition to movant Eloy Rivero's *pro se* motion to vacate his sentence filed under 28 U.S.C. § 2255, and states:

**1.**    <u>**Course of Proceedings and Disposition in the Court Below**</u>

A federal grand jury sitting in the Southern District of Florida returned a 22- count indictment against petitioner Eloy Rivero which charged him with forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with United States Coast Guard officers on December 18, 2005, while those officers were engaged in the performance of their official duties, and while using a deadly and dangerous weapon, to-wit, a vessel, in violation of 18 U.S.C. §§ 111(a) and (b) (Count 1), and 21 individual counts of encouraging and inducing aliens to enter the United States on February 20, 2006, knowing and in reckless disregard of the fact that such entry would be in violation of law, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) (Counts 2-22) [CRDE: 8]. The

indictment also contained a forfeiture count (*id.*).

On March 7, 2008, Mr. Rick P. Hermida, Esq., filed a Notice of Appearance on behalf of the petitioner [CRDE: 7].

Pursuant to a written plea agreement [CRDE: 20], Rivero pled guilty to Counts 1 and 2 of the indictment [CRDE:19, 42]. A pre-sentence investigation report (Initial PSI) was prepared, to which both parties filed objections [CRDE: 30, 31]. The probation officer thereafter filed an Addendum to the PSI and a revised PSI (Revised PSI).

At the sentencing hearing, defense counsel announced that all but one of his objections had been resolved and that he was withdrawing the remaining objection [CRDE:45 at 3]. As a result, the parties agreed that the advisory guideline range was 33-41 months' imprisonment (id.). After hearing argument from both parties regarding an appropriate punishment and allocution from Rivero, the court, after considering the factors outlined in 18 U.S.C. § 3553(a), exercised its post-Booker[1] discretion and sentenced Rivero to a term of 60 months' imprisonment as to each count of conviction [CRDE: 45: 9; see also CRDE: 33]. The court ordered that the sentences run consecutively and that Rivero serve a three-year term of supervised release (id.).

After sentence was imposed, the court elicited objections from the parties [CRDE: 45: 10]. Rivero's sole objection was that the court had violated Burns v. United States, 501 U.S. 129 (1991) by failing to provide advance notice of its intent to impose a sentence greater than that provided by the advisory guidelines [Id.]. Finding that *Burns* notice is not required for a variance, the court invited Rivero to move for correction of the sentence within ten days if he could locate authority to the contrary [Id.]. The court also advised Rivero of his right to appeal [Id.].

---

[1]United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005).

Rivero did not submit any supplemental authority or move for correction of the sentence.

2.      **Statement of the Facts**

**A.  The Plea Agreement and the Change-of-Plea Hearing.**

Pursuant to the written plea agreement, Rivero agreed to plead guilty to Counts 1 and 2, in return for dismissal of the remaining charges [CRDE: 20].  The government agreed to recommend a three-level downward adjustment for acceptance of responsibility if certain conditions were met [Id.].  The parties jointly agreed to recommend a sentence at the low end of the advisory guideline range [Id.].  Rivero agreed to cooperate fully with the United States Attorney's Office and the government agreed to consider filing a sentence reduction motion [Id.].

At the change-of-plea hearing, Rivero represented to the court that he understood his constitutional rights, the possible penalties,  and the terms of the plea agreement [CRDE: 42: 2-8]. The government made a proffer of the evidence supporting Rivero's guilt, as follows:

> If the government had proceeded to trial, the government would prove beyond a reasonable doubt the following, Your Honor: The United States would prove that approximately 10:00 p.m. on December 18th, 2005, United States Coast Guard Station Key West received a report of a northbound go-fast vessel south of Key West.  In response they launched a crew on board a small boat to intercept the vessel.
>
> At approximately 11:15 on December 18th in a location approximately five nautical miles south of Key West, the Key West sea buoy, they spotted the go-fast heading northbound at approximately 35 to 40 knots without running lights.  The Coast Guard vessel energized its blue lights and siren in an attempt to stop the vessel.  At distances of approximately 10 to 15 feet from the go-fast vessel, they stated, Stop your vessel, both in English and in Spanish over the loud hailer.  They saw two males on board the go-fast who each saw and heard the U.S. Coast Guard vessel and its order to stop.
>
> The driver of the vessel at all relevant times would be identified as the defendant in this matter, Eloy Rivero.  The vessel, the white 33-foot Donzi, Florida registration numbers FL 4422FG, had twin 225-horse power Yamaha

outboards.

The coxswain of the United States Coast Guard vessel, Petty Officer Crystal Lavalia (phonetic) would testify to the following: Rivero made multiple attempts to ram the Coast Guard vessel. Petty Officer Lavalia avoided all but one of them with his evasive maneuvering, but, in fact, Mr. Rivero did impact the boat wilfully. Once the use of force – The circumstances would prove that it was a willful forceful use of the boat. Once the use of force was approved, the United States Coast Guard maneuvered to the vessel's port side. At this time he sharply turned his vessel into the Coast Guard boat. The collision damaged the U.S. Coast Guard's boat's sponson. That is an outboard bumper.

The sea state and weather were both calm and did not factor into the collision.

The vessel came to a stop two miles south of Sand Key, Florida. The boarding team subdued the other person on board the go-fast, but Rivero jumped into the water and removed his sweatshirt. He was then retrieved from the water.

Once the boarding team of the Coast Guard got on the previously described vessel, they discovered that there were ten undocumented Cuban aliens inside the forward cabin of the boat. The composition of the migrants were six adults, three adults female, and one male child.

There would be further testimony from Agents Aaron Woods and Special Agent Victor Garcia, who would testify that Mr. Rivero had waived his rights and consented to be interviewed. He stated that he knew it was a crime to bring aliens into the United States.

Petty Officer Gilmore would testify [to] the following information: On February 19th – This is Count 2, Your Honor. – 2006, the U.S. Coast Guard cutter Matagorda interdicted a white 30-foot Scorpion go-fast vessel, with a Florida registration number FL 1186EY, heading northbound 58 miles south of Marquesas Key. [Eloy] Rivero, the defendant, was on board operating the vessel and 22 Cuban nationals were subsequently discovered to be on that boat. The composition of the nationals were 14 adult males, 7 adult females and one male child. One of the Cuban national's name was Dr. Inia Cortelerro Martinez (phonetic) and another was Miline Gonzalez Garcia (phonetic).

Dr. Martinez would testify as to the following: They departed Cuba on

February 19, 2006, pursuant to a prearranged plan. They were driven by a bus, that is some of the other occupants of the vessel previously described, were driven to a boat by bus to a remote stretch of beach outside of Havana, Cuba. A boat was waiting for them offshore. They swam out to the boat. The driver of the boat was Eloy Rivero. The Coast Guard interdicted them on this boat.

Ms. Miline Garcia would also– Gonzalez Garcia would also testify to the same modus operandi as to the departure and the pickup by Mr. Rivero.

All of these occurring off the coast of Key West, Key West being the first place that this defendant was brought to after its interdiction.

[CRDE: 42: 8-11].

Rivero agreed with the government's proffer, adding that he "tried it but nothing was achieved" and that he "never became a threat to anyone" (DE: 42 at 12). Rivero then entered a formal plea and the court adjudicated him guilty of Counts 1 and 2 (DE: 42 at 12-14).

The initial PSI recited the details of the December 2005 and February 2006 smuggling ventures that formed the basis for Counts 1 and 2 (Initial PSI at ¶¶ 6-19). Based on information provided by the government, it also stated that Rivero had been involved in two earlier smuggling attempts, one in April 2005 and another in September 2005, the latter of which would have resulted in a $40,000 payment to Rivero had it been successful (id. at ¶¶ 20-21). In the April 2005 incident, Rivero had successfully smuggled his younger brother into the United States (id. at ¶ 20). In the September 2005 incident, Rivero planned to bring additional family members to the United States, but his attempt to do so was thwarted when the individuals orchestrating the scheme in Cuba placed other aliens on the vessel (id.).

The probation officer calculated Rivero's total offense level to be 21 which, combined with a Criminal History Score of I, yielded an advisory guideline range of 37-46 months' imprisonment (id. at ¶¶ 8-49, 52, 90). The probation officer did not award Rivero an acceptance of responsibility

adjustment because he "was adamant" that he had never rammed the Coast Guard vessel, notwithstanding his guilty plea to Count 1 (id. at ¶ 25).

Both Rivero and the government filed objections to the PSI. In relevant part, Rivero objected to Paragraphs 20 and 21 of the PSI which dealt with the two uncharged smuggling ventures that occurred in April and September 2005 (DE:30). Rivero alleged that that information had been derived from a post-conviction proffer he had given to the government as part of his cooperation agreement (id.). Rivero argued that USSG §1B1.8 prohibited any direct use of the information to calculate the guideline range (id.). Rivero also supplied the court with a statement in which he took responsibility for his conduct on December 18, 2005 and asked that he be awarded a three-point acceptance of responsibility adjustment (id.). Rivero also challenged the probation officer's two-point enhancement pursuant to USSG § 2L1.1(b)(5) (see Initial PSI at ¶ 36), which was based on his having intentionally or recklessly created a substantial risk of death or serious bodily injury (DE:30).

Citing § 1B1.8, the government joined in Rivero's objection to Paragraphs 20 and 21 (DE: 31). The government stated that those paragraphs contained immunized information provided by Rivero during a post-conviction debriefing and that the government had no prior or independent knowledge of those smuggling incidents (DE: 31). Accordingly, the government stated, "[b]ecause paragraphs 20-21 derive exclusively from information [learned] during a debriefing, the information cannot be used in determining the applicable guideline range" (id.). The government also argued that a two-level increase for reckless endangerment during flight was warranted pursuant to USSG § 3C1.2 (id.).

The probation officer prepared an Addendum, which addressed the parties' objections, and a Revised PSI. In the Addendum, the probation officer stated that the parties' joint objection to

Paragraphs 20 and 21 was "moot" because the information contained therein had not been used to calculate the advisory guideline range. As a result, the Revised PSI left Paragraphs 20 and 21 intact.

With respect to the remaining objections, the probation officer concurred with the government's position that a § 3C1.2 enhancement was warranted (see Addendum to the PSI) and revised the Offense Level Computation section accordingly (see Revised PSI at ¶ 33). The probation officer disagreed with Rivero's challenge to the §2L1.1(b)(5) enhancement, which remained in the Revised PSI (see ¶ 37 of the Revised PSI). However, the probation officer agreed that Rivero was entitled to a three-point acceptance of responsibility adjustment based on his written statement and revised the PSI accordingly (see Revised PSI at ¶¶ 49, 50).

The revised calculations resulted in a total offense level of 20 which, combined with a Criminal History Score of I, yielded an advisory guideline range of 33-41 months' imprisonment (Revised PSI at ¶¶ 27-54, 93). The probation officer also set forth the statutory maximum penalties Rivero faced: 0-20 years on Count 1 and 0-10 years on Count 2 (Revised PSI at ¶ 92).

At the outset of the sentencing hearing, the district court inquired as to whether the parties had any objections to the PSI [CRDE: 45: 3]. Defense counsel stated:

> Judge, I had initially filed back on June 6 several objections. I believe the majority have already been resolved. I believe there was an outstanding objection to paragraph 36 [the §2L1.1(b)(5) enhancement] which I'm withdrawing at this point.

(*id.*). Defense counsel then re-affirmed that he had no further objections and agreed with the district court that the advisory guideline range was 33-41 months' imprisonment (*id.*).

In mitigation of sentence, defense counsel noted that Rivero was cooperating with the government [CRDE: 45: 3-4). Defense counsel also stated that Rivero "was initially motivated over his family as far as at least two attempts were made to bring over the remainder of his family"

[CRDE: 45: 7].  The two attempts to which defense counsel was referring were the two uncharged

smuggling trips which Rivero had disclosed to the government during his debriefing and which had

been the subject of his earlier § 1B1.8 objection (see Revised PSI, ¶¶ 20 and 21).  Rivero addressed

the court, apologized for his conduct, and asked for mercy [CRDE: 45: 4-5].  After noting its

intention to impose a reasonable sentence pursuant to 18 U.S.C. § 3553(a), the district court stated

that it was "important to set forth the offense conduct" and proceeded to summarize that portion of

the Revised PSI that outlined Rivero's actions on December 18, 2005, when he rammed the Coast

Guard vessel in defiance of the Coast Guard's order to stop, jumped overboard in an effort to avoid

capture, and then stated to the Cuban aliens aboard the vessel, "Sorry, guys, next time" [DE: 45: 5-

7].

Prior to imposing sentence, the court explained that it intended to impose a sentence outside

the advisory guideline and outlined the facts and circumstances it had taken into consideration in that

regard:

> As I indicated to you, and I think the circuit appreciates hearing from the
> district court with respect to the particular provisions that are relied on before
> imposing a reasonable sentence other than what is provided for in the
> advisory guidelines.  But in referring to Title 18, United States Code, Section
> 3553, the Court has considered the nature and circumstances of the offense
> and the history and characteristics of the defendant, specifically noting the
> prior instances of smuggling of Cubans.  Other than the particular offense
> conduct and as well the need for the sentence imposed to reflect the
> seriousness of the offense to promote respect for the law and to provide just
> punishment for the offense, as well as to afford adequate deterrence to
> criminal conduct and protect the public from further crimes of the defendant.
>
> The Court notes the seriousness of the offense, not just the smuggling of the
> aliens into the United States and the repeated attempts and the danger it poses
> to them, the inherent danger in traveling in a small boat relative to the
> number of people that were on board.  Some without adequate safety life
> vests, moving a child in the instance of the charged offense, and separate and
> apart from that the danger to the Coast Guard officers who risk their lives in

> attempting to provide safe navigable waters and they come up with somebody like Mr. Rivero who attempts to ram the boat and inflict further harm, I don't see why they have to be exposed to that kind of treatment on the high seas which are dangerous in and of itself. That each of those offenses deserve separate consideration and warrant a sentence above what is provided for under the guidelines.
>
> The Court has considered the statements of all parties, the presentence report which contains the advisory guidelines, and the statutory factors. It is the finding of the Court that the defendant is not able to pay a fine.
>
> It is [the] judgment of the Court that the defendant, Eloy Rivero, is committed to the Bureau of Prisons to be imprisoned for a term of 60 months as to Count 1 and 60 months as to Count 2. Said term to run consecutive to the term imposed in Count 1.

[CRDE:45: 7-9].

After imposition of sentence, the court inquired as to whether either party objected to its findings of fact or the manner in which sentence had been imposed [CRDE: 45: 10]. Defense counsel made a *Burns* objection on the ground that "[w]e received no prior indication that the Court was going to go outside of what was recommended by the PSI" (id.). The court stated its understanding that "it is the status of the law there is no such thing as an upward departure anymore. That any sentence within the statutory maximum provided it is reasonable and subject to appellate review for [its] reasonableness. So I don't think you are entitled to notice in that sense" (id.). Nevertheless, the court informed Rivero that it would be interested in any authority to the contrary and invited defense counsel to supply such authority to the court within 10 days, along with a motion to correct the sentence (id.).

Rivero did not file a motion to correct the sentence or any authorities on the *Burns* issue after sentencing.

### B.     The Appeal

On July 13, 2006, the petitioner filed a Notice of Appeal through Mr. Hermida [CRDE: 34]. Mr. Hermida filed a Notice of Withdrawal on July 26, 2006 [CRDE: 35]. On August 2, 2006, Mr. Gustavo J. Garcia-Montes, Esq., filed a Notice of Appearance [CRDE: 37].

On August 24, 2008, the petitioner filed an Appeal, in which he contested the reasonableness of the sentence and the lack of a Burns notice [CRDE 44]. The Eleventh Circuit denied the petitioner's appeal [CRDE: 47]. The petitioner later sought *certiorari* with the Supreme Court, which was denied.

**3. Rivero's 28 U.S.C. § 2255 Motion**

Rivero contends that he was denied effective assistance of counsel for the following five reasons: (I) counsel failed to hire a private investigator; (ii) counsel did not apprise the petitioner of mitigating evidence; (iii) counsel failed to request a lesser included offense; (iv) counsel failed to interview potential alibi witnesses; (iv) counsel failed to move the court to correct the sentence; (v) and counsel failed to challenge the assault offense [CVDE 10: 2-3]. Based upon these alleged errors, Rivero asks the Court to grant an evidentiary hearing and any other relief that the court deems proper [CVDE 10: 12-13]. Rivero's claims are not procedurally barred. In Massaro v. United States, 538 U.S. 500 (2003), the Supreme Court concluded that criminal defendants may raise ineffective assistance of counsel claims for the first time during a Section 2255 proceeding. As a result, a defendant need not show cause and prejudice pertaining to her failure to raise the claim in a prior proceeding. See Cross v. United States, 893 F.2d 1287, 1289 (11th Cir. 1990).

Rivero also alleges that the Government breached the plea agreement in the following four manners: (I) by not recommending a sentence within the Guidelines [CVDE: 10: 3]; (ii) by requesting a two-level enhancement that was not listed in the plea agreement [CVDE:10: 3]; (iii) by

not arguing, when the defendant received a thirty percent reduction of his sentence on March 31, 2008, that the judge should have adjusted his sentence to thirty percent off his original guideline range of 33-41 months [CVDE: 10: 3]; and (iv) by not filing a motion for a bond hearing [CVDE: 10: 3].

Rivero further alleges that the District Court committed plain error in the following two manners: (I) the District Court denied the Defendant a bond [CVDE: 10: 3], and (ii) the District Court received a plea from the Petitioner for assault, in violation of 18 U.S.C. § 111, even though the defendant did not intend or agree to plead guilty to assault.

## Argument

Claims of ineffective assistance of counsel under the Sixth Amendment are examined through the two-part test initially set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In order to meet the burden of proving ineffective assistance, the movant must first show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment. Id. at 687. If this showing can be made, the movant must then demonstrate that the "deficient performance prejudiced the defense," which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Unless the movant can make both showings, she cannot prevail. See id. The two prongs of Strickland are known respectively as the "performance" and "prejudice" prongs.

When a court evaluates the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound trial strategy." Strickland,

466 U.S. at 689 (internal citations omitted). This presumption is even stronger where, as here, "the reviewing court is examining the performance of an experienced trial counsel." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc). In order to prove incompetence, a movant "must identify specific acts or omissions that were not the result of reasonable professional judgement, and a court should deem these acts or omissions deficient only if they 'were outside the wide range of professionally competent assistance.'" Brownlee v. Haley, 306 F.3d 1043, 1059 (11th Cir. 2002) (quoting Strickland, 466 U.S. at 690). As the Eleventh Circuit has explained, "the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high." Id. In light of the "strong presumption in favor of competence," a movant seeking to prove a Sixth Amendment violation "must establish that no competent counsel would have taken the action that his counsel did take." Chandler, 218 F.3d at 1314-15 (emphasis added).

A movant can prevail under the second prong of Strickland only if she can "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." Strickland, 466 U.S. at 693. In order to make this showing, the movant must demonstrate more than "some conceivable effect on the outcome of the proceeding." Id. Although a movant need not show that the outcome of her case would more likely than not have been different absent counsel's ineffectiveness, she "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The Eleventh Circuit has cautioned that "this standard is difficult to meet." Brownlee, 306 F.3d at 1059. In fact, the cases in which a defendant can prove ineffectiveness "are few and far between." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). When conducting the prejudice

inquiry, a court must consider counsel's error in the context of "the totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695.

Significantly, if a reviewing court determines that a movant suffered no prejudice even if counsel's performance was deficient, it can reject an ineffective assistance claim based on the second prong of Strickland without conducting a full analysis of the first prong. Id. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Applying these standards, Rivero fails to establish that he received ineffective assistance of counsel. Rivero contends that he was denied effective assistance of counsel for the following four reasons: (I) counsel failed to hire a private investigator; (ii) counsel did not apprise the petitioner of mitigating evidence; (iii) counsel failed to request a lesser included offense; (iv) counsel failed to interview potential alibi witnesses; (iv) counsel failed to move the court to correct the sentence; (v) and counsel failed to challenge the assault offense [CVDE: 10: 2-3].

### a.    **Alleged Failure to Hire a Private Investigator**

Rivero first contends that Mr. Hermida was ineffective because he failed to hire a private investigator [CVDE 10: 2]. This claim must fail because Rivero cannot establish that Mr. Hermida's performance was deficient under the first-prong of Strickland. A defendant is entitled to representation within the wide range of professionally competent assistance. See Brownlee v. Haley, 305 F.3d 1043, 1059 (11th Cir. 2002). By contrast, a defendant does not have a right to demand that his attorney hire a private investigator. See United States v. Schoflander, 743 F.2d 714, 721 (9th Cir. 1984) (petitioner's claim, *inter alia*, that his attorney had failed to hire a private investigator did not amount to ineffective assistance of counsel). This principle is especially appropriate in this case.

Mr. Hermida is an experienced defense counsel with a well-known reputation for thorough representation of his clients.  See Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2006) (presumption of competent counsel is even higher with experienced counsel).  Additionally, the facts of this case reaffirm his judgment that a private investigator was unnecessary.  The potential witnesses in the case were law enforcement officers and agents.  Other than the Coast Guard small boat crews, there were no victims, and all of the migrants were repatriated to Cuba (PSI ¶ 12).  Thus, Rivero fails to show that Mr. Hermida's representation of Rivero was deficient for lack of a private investigator.

Even if this Court should find that Mr. Hermida's performance was deficient, Rivero's first claim of ineffective assistance of counsel must fail under the second prong of Strickland.  The evidence against the defendant was overwhelming.  According to the PSI, the defendant was piloting a go-fast vessel in a northbound direction at approximately 35 to 40 knots [PSI ¶ 6].  There were ten Cuban migrants locked inside a forward cuddy cabin of the vessel, which was secured from the outside with a bungee cord (PSI ¶ 11).  The migrants inside had no ability to exit the cuddy cabin (PSI ¶ 11).  In response to the vessel, the U.S. Coast Guard cutter released its small boat, and the small boat pursued Rivero's go-fast (PSI ¶ 8).  The Coast Guard small boat activated its blue light and siren and they directed Rivero to stop his vessel in English and Spanish using both their loud hailer and their radio (PSI ¶ 8).  A second Coast Guard small boat joined the case (PSI ¶ 8).  Standing at the helm of the go-fast vessel, Rivero steered the go-fast towards the Coast Guard small boat in an effort to ram it multiple times (PSI ¶ 8).  The Coast Guard then fired warning shots in front of the bow of the vessel to warn it to stop (PSI ¶ 8).  Because Rivero still continued to pilot the vessel at high speed without stopping, the Coast Guard fired rounds into the outboard engines of the

go-fast, effectively disabling them (PSI ¶ 9). After the vessel stopped, Rivero jumped into the water, emptied his pockets, and removed his sweatshirt (PSI ¶ 10). He stated to the Cuban migrants on board the go-fast, "Sorry, guys, next time" (PSI ¶ 10). In light of the weight of the evidence against the defendant, combined with the paucity of non-government witnesses for further investigation, the Rivero does not and cannot show that the failure to hire a private investigator "actually had an adverse effect on the defense." See Strickland, 466 U.S. at 693.

### b. **Alleged Failure to Apprise Rivero of the Case**

The petitioner's second basis for his claim of ineffective assistance of counsel is that Mr. Hermida failed to apprise the petitioner of developments in the case [CVDE: 10: 2]. The claim must fail because it is contrary to the history of and the facts in this case.

Under Strickland, a petitioner must point to particular acts or omissions that his counsel committed as evidence of deficient performance. Strickland, 466 U.S. at 690. In his petition, Rivero briefly mentions only "discovery of new and mitigating evidence, Criminal Complaints, Indictments, Coast Guard Investigation Reports dated December 19, 2005, and the Assault Charge" as examples of the developments in the case about which he was allegedly unaware [CVDE: 10: 2]. The facts of the case, however, illuminate that Rivero was aware of all of these items.

The record demonstrates that the petitioner was aware of the assault charge. At the petitioner's change of plea hearing, the District Court ensured that the petitioner was not suffering from a mental illness or an addition to narcotics, that the petitioner was not under the influence of any medication or alcoholic beverage, that he had received the plea agreement and discussed it with his counsel, that he was satisfied with his advice, that he had read and discussed the plea agreement with his counsel, that the plea agreement represented the petitioner's entire agreement with the

United States, that no one had promised the petitioner anything in order to obtain the plea, that no one had forced the petitioner to plead, that the terms of the plea agreement were merely recommendations which were not binding on the Court, that felons have diminished rights in the United States, that the petitioner understood the maximums and minimum sentences in his case, that he had discussed the application of the guidelines with his counsel, that the District Court has the authority to depart from the guidelines and impose a sentence that is more severe or less severe than those called for by the guidelines, and finally that the petitioner understood his rights associated with the right to appeal [CRDE 32: 3-7]. The petitioner then knowingly pled guilty to the Count One of the indictment, which charged the petitioner with assaulting, resisting, or impeding a U.S. Coast Guard officer, in violation of 18 U.S.C. § 111(b).

It is unclear of what other developments in the case the petitioner is unaware. Among his list of developments of which he was supposedly unaware, the petitioner lists indictments, complaints and a report of investigation dated December 19, 2005, which date is prior to the events that led to the petitioner's conviction. Nevertheless, there was only one complaint [CRDE 2], one indictment [CRDE 8], and Mr. Hermida was not obligated to share every piece of evidence with his client that related to potential evidence relevant to Fed. R. Evid. 404(b). Even if Mr. Hermida had not shown the December 19, 2005 report of investigation to the petitioner, his decision would have been reasonable and professional because 404(b) information is only relevant at trial. In this case, the petitioner pled guilty. The defendant cites no specific "new and mitigating evidence" to support his claim of ineffective assistance of counsel. See Strickland, 466 U.S. at 690. Because the record reflects that the petitioner either knew about the very developments of the case which he claims to have been unaware, or because the petition is unable to suggest any specific act or omission to which

he was unaware, this claim fails to show ineffective assistance of counsel.

### c. Alleged Failure to Request a Lesser Included Offense

Rivero's third basis for ineffective assistance of counsel is that counsel failed to request a lesser included offense. This basis is nonsensical and does not satisfy Strickland.

The petitioner pled guilty to Count One of the indictment, which charged him with assaulting, resisting, or impeding a U.S. Coast Guard officer, in violation of 18 U.S.C. § 111(b). The petitioner also pled guilty to Count Two of the indictment, which charged him with encouraging or inducing an alien to illegally enter the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv). In light of the strength of the evidence against the petitioner, and in light of the petitioner's callous disregard for the safety of the Cuban migrants locked inside the cuddy cabin of the go-fast piloted by the petitioner, the United States under no circumstances would have accepted a plea from the petitioner to a lesser included offense. Thus, the claim that Mr. Hermida was ineffective because he failed to negotiate for a lesser included offense fails both the first and second prongs of Strickland. It was not deficient performance, and the defendant suffered no prejudice.

### d. Alleged Failure to Investigate Potential Alibi Witnesses

Rivero's fourth basis for claiming ineffective assistance of counsel is his counsel's failure to investigate three potential alibi witnesses [CVDE 10: 2-3]. This claim must fail because it does not satisfy the first prong of Strickland.

Where counsel is alleged to have failed to investigate a particular line of defense, in the absence of evidence to the contrary courts presume that the decision was strategic. Thomas v. Zant, 697 F.2d 977, 986 (11th Cir. 1983). Strategic decisions of counsel not to pursue certain lines of defense are rarely, if ever, deemed ineffective if counsel adequately investigated options before

rejecting them.  Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983), reh'g denied, 716 F.2d 914, cert. denied, 464 U.S. 1063 (1984).  Even if the decision appears wrong, counsel's decision will only be held ineffective where the decision was so patently unreasonable that no competent attorney would have chosen it.  Id.

In this case, the potential witnesses listed by the petitioner are Coast Guard Investigative Services ("CGIS") Special Agent Aaron Woods, CGIS Special Agent Greg Bender, and Alejandro Llerena-Fernandez.  Special Agent Woods was the United States' case agent.  Special Agent Greg Bender is his colleague.  Llerena-Fernandez was the defendant's co-pilot and crew during the voyage.  None of these individuals could serve as legitimate alibi witnesses for the petitioner.  Thus, counsel's strategy not to investigate them was certainly strategic and does not constitute ineffective assistance of counsel.

**e.**     **Alleged Failure to Move the Court to Correct the Sentence within Ten Days**

Rivero's fifth basis for his claim that he was denied effective assistance of counsel is his counsel's failure to correct the sentence within ten days [CVDE 10: 3].

At trial, Mr. Hermida objected to the sentence:

> MR. HERMIDA:        Judge, we would like to make a Burns objection at this point.  We received no prior indication that the Court was going to go outside of what was recommended by the PSI.
> THE COURT:        It is my understanding that it is the status of the law there is no such thing as an upward departure anymore.  That any sentence within the statutory maximum provided it is reasonable and subject to appellate review for its reasonableness.  So I don't think you are entitled to notice in that sense.  If you have any authority for that proposition, I would like to hear it.
> Do you have any case law?
> MR. HERMIDA:        Not now, Judge.
> THE COURT:        Well, you have ten days within which to move to correct the sentence.  If you are aware of any authority out there that requires that you be given notice for a sentence other than what's provided fo in the guideline range please bring it to my attention and we will reset it for another hearing.

[CRDE 32: 10].

Mr. Hermida filed a Notice of Appeal on July 13, 2006 [CRDE 34].

Rivero's claim for ineffective assistance of counsel must fail because the failure to file a notice to correct the sentence does not satisfy the first prong of <u>Strickland</u>. Fed. R. Crim. Proc. 32(h) establishes the requirement of notice of possible departure from the sentencing guidelines. Rule 32(h) does not apply, however, to sentences "set outside the advisory guidelines range based not on the guidelines' departure provisions, but on a district court's consideration of the section 3553(a) factors. <u>United States v. Irizarry</u>, 458 F.3d 1208, 1212 (11th Cir. 2006) (decided a month after Rivero's sentencing hearing). Because Rule 32(h) did not apply to Rivero, his claim for ineffective assistance of counsel based on Rule 32(h) fails.

Even if the Court should find that Mr. Hermida's performance was deficient, the petitioner's claim would also fail to satisfy the second prong of <u>Strickland</u>. Rule 32(h) is a Notice provision. At the sentencing hearing, the District Court articulated that if the Rivero was entitled to notice of the Court's intention to vary upwards, the Court would merely hold another hearing after the period of notice and sentence Rivero in the same manner. Additionally, Mr. Hermida filed a Notice of Appeal within the ten-day time period, and petitioner's new counsel raised the notice issue, unsuccessfully, on appeal.

For these reasons, Rivero's assertion that his counsel was ineffective because he failed to move the court to correct its sentence is without merit.

### f.   **Alleged Failure to Challenge Count Two of the Indictment, Assault**

Rivero's sixth basis for his claim of ineffective assistance of counsel is that counsel failed to challenge the assault offense.

At the petitioner's change of plea hearing, the District Court ensured that the petitioner was not suffering from a mental illness or an addition to narcotics, that the petitioner was not under the influence of any medication or alcoholic beverage, that he had received the plea agreement and discussed it with his counsel, that he was satisfied with his advice, that he had read and discussed the plea agreement with his counsel, that the plea agreement represented the petitioner's entire agreement with the United States, that no one had promised the petitioner anything in order to obtain the plea, that no one had forced the petitioner to plead, that the terms of the plea agreement were merely recommendations which were not binding on the Court, that felons have diminished rights in the United States, that the petitioner understood the maximums and minimum sentences in his case, that he had discussed the application of the guidelines with his counsel, that the District Court has the authority to depart from the guidelines and impose a sentence that is more severe or less severe than those called for by the guidelines, and finally that the petitioner understood his rights associated with the right to appeal [CRDE: 32: 3-7].

The government then gave a detailed summary of the facts that it would have proven had the case proceeded to trial [CRDE: 32: 6 - 12].

Following the factual proffer, the Court then addressed the petitioner:

> THE COURT: Having gone over all of those matters with you, how do you plead to Count 1 of the indictment, which charges you with forcibly assaulting, resisting, opposing, impeding and intimidating and interfering with the United States Coast Guard officers and employees while they were engaged in the performance of their duties, and in the commission of these acts, used a deadly and dangerous weapon, that is, a vessel, in violation of Title 18, United States Code, Section 111; guilty or not guilty?
>
> THE DEFENDANT: I'm guilty.

[CRDE: 32: 13]. Thus, the defendant knowingly and voluntarily pled guilty to Count 1. His

counsel's alleged failure to challenge the assault claim as a basis for ineffective assistance of counsel has no merit.

The petitioner perhaps suggests that assault count is improper because it was not alleged in the complaint [CRDE: 2]. It is not necessary for a complaint to encompass every possible statute with which the United States might charge a defendant. Failure to challenge the assault count because it was not included in the complaint would not violate either prong of <u>Strickland</u>.

**g.** **Alleged Breach of the Plea Agreement**

The petitioner's seventh claim is that the United States breached the plea agreement by failing to recommend to the District Court that the petitioner receive a Guideline sentence, and by failing to recommend that the defendant's Guideline sentence be used when the defendant received a Rule 35 reduction [CVDE 10: 2-3]. This claim fails to demonstrate either a breach of the defendant's plea agreement or prejudice.

In the petitioner's plea agreement with the United States articulates that the United States and the defendant agreed to jointly recommend a sentence at the low end of the guideline range [CRDE 10 at ¶ 10]. It further states that:

> The defendant is aware that the sentence has not yet been determined by the court. The defendant is also aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether the estimate comes form the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the court. The defendant understands further that any recommendation that the government makes to the court as to sentencing, **whether pursuant to this agreement or otherwise**, is not binding on the court and the court may disregard the recommendation in the entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw his plea upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

[CRDE: 10 at ¶ 9].  The petitioner signed his plea agreement on April 4, 2006 [CRDE: 10].

At the petitioner's change of plea hearing, the United States informed the District Court of the existence of the plea agreement [CRDE 32: 3].

The United States later recommended that the petitioner receive a Rule 35 reduction for substantial assistance, which he received.

On these facts, the petitioner is unable to demonstrate that the United States breached its plea agreement. The plea agreement itself recommends to the Court that Rivero receive a sentence at the low end of the guidelines score.  It states "[t]he defendant understands further that any recommendation that the government makes to the court as to sentencing, **whether pursuant to this agreement or otherwise**, is not binding on the court."  This language fulfills the United States' obligation to make the joint recommendation once and for all.  Moreover, the petitioner failed to make a recommendation to the District Court at the sentencing hearing for a sentence within the guideline range, and the petitioner has not accused his counsel of ineffective assistance.  Thus, based on the language of the plea agreement itself, the petitioner fails to show a breach of the agreement.

Additionally, were the Court to find that the United States breached its plea agreement with Rivero, the petitioner is unable to demonstrate prejudice. A movant can prevail under the second prong of Strickland only if he can "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense."  Strickland, 466 U.S. at 693.  The transcript of the sentencing hearing demonstrates the District Court's determination to vary upwards [CRDE: 45]. The District Court articulated in detail the facts of the case, the aggravating circumstances, and the 18 U.S.C. § 3553(a) factors which led him to vary upwards of the petitioner's guidelines range.  The

District Court read at length from the Pre-Sentence Investigation [CRDE: 45: 4-8]. The petitioner fails to establish how a verbal recommendation from the United States–beyond what the District Court already possessed in the form of the plea agreement–would have changed the District Court's mind.

For these reasons, the petitioner fails to establish either that the United States breached its plea agreement or, even if the United States had breached the agreement, that he suffered any prejudice

### h.    Issue Not Raised on Appeal

Rivero alleges that the District Court committed plain error in the following two manners: (I) the District Court denied the Defendant a bond [CVDE: 10: 3], and (ii) the District Court received a plea from the Petitioner for assault, in violation of 18 U.S.C. § 111, even though the defendant did not intend or agree to plead guilty to assault [CVDE:10: 3]. Rivero did not, however raise either of these issues in his appeal to the Eleventh Circuit, and, as a result, the Court should summarily dismiss them now.

Claims not raised in a defendant's original criminal proceeding, whether at the district court level or on appeal, are subject to dismissal when they are raised for the first time in a collateral proceeding. United States v. Frady, 456 U.S. 152, 167-69 (1982); Parks v. United States, 832 F.2d 1244, 1245-46 (11th Cir. 1987). Once the government sets forth the circumstances constituting a defendant's procedural default, it becomes the defendant's burden to disprove the default and to establish "cause and prejudice" for the failure to previously assert his claims. McClesky v. Zant, 499 U.S. 567, 493-94. Where a defendant makes no showing of cause and prejudice regarding his failure to raise issues on direct appeal that are raised for the first time in a § 2255 petition, summary

dismissal of those claims is warranted. <u>Parks</u>, 832 F.2d at 1246. Munoz-Loperas' habeas petition is silent on this point.

"'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." <u>Coleman v. Thompson</u>, 501 U.S. 722, 753 (1991). "Objective factors that constitute cause," include "interference by officials," <u>McClesky</u>, 111 S.Ct. at 1470, or "a showing that the factual or legal basis for a claim was not reasonably available to counsel," <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). If a petitioner cannot show cause for his failure to raise his claims previously, the court need not consider whether he was prejudiced by his procedural default. <u>See</u> <u>Billy-Eko v. United States</u>, 8 F.3d 111, 114 (2d Cir. 1993). To establish prejudice, a petitioner must demonstrate prejudice so substantial that it undermines the integrity of the entire proceeding. <u>Frady</u>, 456 U.S. at 152.

None of the substantive issues Rivero asserts in his § 2255 petition were raised on direct appeal. Moreover, Rivero does not, and cannot, meet his burden of establishing cause and prejudice for the failure to raise these claims earlier. Accordingly, the merits of the claims cannot be considered. <u>Macklin v. Singletary</u>, 24 F.3d 1307 (11th Cir. 1994).

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court dismiss Rivero's *pro se* motion to vacate his sentence pursuant to 28 U.S.C. § 2255.

Respectfully submitted,

R. ALEXANCRDER ACOSTA
UNITED STATES ATTORNEY

BY:   /s/ Jaime A. Raich
Jaime A. Raich
Assistant United States Attorney
Florida Bar No. 0040111
99 Northeast Fourth Street
Miami, Florida 33132
305-961-9214
jaime.a.raich@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing response was sent by United States mail on this 28th day of October, 2008, to *pro se* movant Eloy Rivero, Reg. No. 64764-004, P.O. Box 5888, Yahoo City, MS 39194.

/s/ Jaime A. Raich
Jaime A. Raich
Assistant United States Attorney